IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICOLE YVETTE WINSTON                   :
                                        :
                                        :
    v.                                  :   Civil Action No. DKC 21-1358
                                        :
U.S. DEPARTMENT OF EDUCATION            :
                                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this *pro se* student loan case is a motion to dismiss or, in the alternative, for summary judgment, filed by Defendant United States Department of Education ("Department of Education"). (ECF No. 11). The issues have been fully briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

**I.   Factual Background**

The facts outlined here, which are set forth in the complaint and an accompanying attachment, are construed in the light most favorable to the Plaintiff, Nicole Yvette Winston. Ms. Winston alleges that she took out $77,701 in student loans to attend law school beginning in 1996. (ECF No. 1, ¶ 1). The total amount outstanding today is likely greater than $300,000. (*See* ECF No. 1-2, at 29). She consolidated her loans in 1999. (ECF No. 1, ¶ 1). The loans were serviced after consolidation by American

Education Services, although Ms. Winston indicates that Key Bank also serviced her loans at some point. (ECF No. 1, ¶¶ 4, 6, 10). Ms. Winston became a D.C. bar member but struggled to find work and filed for bankruptcy in November 2006. (*Id.*, ¶ 3). She resigned from the D.C. bar in May 2007 and had a serious medical event later that year which required her to go on disability. (*Id.*, ¶ 3). Throughout this period, Ms. Winston received continuous deferments from her loan servicer. (*Id.*, ¶ 4).

In 2018, Ms. Winston started receiving collection letters and notices that the Treasury Department would begin withholding funds from her. (ECF No. 1, ¶ 5). Ms. Winston contested these efforts, believing the loan should not have been placed in default in the first place. (*Id.*). She appears to believe her debt is unenforceable because she is on disability and suffered economic hardship (in part due to a government campaign of harassment). (*Id.*, ¶¶ 5, 8, 22; *see also* ECF No. 1-2, at 16-18, 21-23, 26-28 (various letters); ECF No. 13, at 6 (invoking the doctrine of unconscionability)). Ms. Winston also alleges that the Department's outstanding debt calculations are incorrect but cites only to an allegedly improper fee charged, without her knowledge, for consolidating her loans in 1999. (ECF No. 1, ¶¶ 5-6). She also believes the Department improperly disclosed her personal information to collection agencies. (*Id.*, ¶¶ 6-7, 15-16).

**II. Procedural Background**

Ms. Winston filed this action without legal representation in June 2021. (ECF No. 1). In September 2021, the Department of Education moved to dismiss or, in the alternative, for summary judgment on Ms. Winston's claims. (ECF No. 11). Ms. Winston opposed and the Department replied. (ECF Nos. 13; 14). The Department attacks Ms. Winston's claims jurisdictionally and on the merits.

Ms. Winston purports to bring claims for (1) fraudulent misrepresentation, (2) conspiracy, and (3) violations of Department of Education privacy regulations. (*See generally* ECF No. 1).[1] However, the only relief she explicitly requests is "rescission of the contract, with extinguishing all duties and obligations of the such." (*Id.*, ¶¶ 1, 22). For this reason, Ms. Winston's complaint is construed to assert a claim for discharge of her loans under Higher Education Act ("HEA") and the Administrative Procedure Act ("APA"), as discussed further below.

**III. Subject Matter Jurisdiction**

   **A.   Standard of Review**

Questions of subject matter jurisdiction raised under Fed.R.Civ.P. 12(b)(1) concern the court's authority to hear the case. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 187 (4th Cir.

---

[1] Ms. Winston no longer pursues her two other claims for violations of the Maryland Fair Debt Collection Act and the Federal Debt Collection Act. (ECF No. 13, at 3).

2019). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Demetres v. East West Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). Defendants may challenge subject matter jurisdiction in one of two ways: facially or factually. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). When a defendant makes a facial challenge, the plaintiff "is afforded the same procedural protection" as under Rule 12(b)(6). *Wikimedia Found. v. NSA*, 857 F.3d 193, 208 (4th Cir. 2017) (quotation omitted). "[T]he motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. Where a defendant makes a factual challenge, the complaint is not presumed to be true, and the court may consider other evidence and resolve disputed issues of fact. *Id.*

Unrepresented parties' pleadings are liberally construed and held to a less strict standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction means that courts will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it "does not mean overlooking the pleading requirements[.]" *See Bing v. Bravo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020) (citation omitted); *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). Where an unrepresented plaintiff's complaint must be dismissed, courts should provide "notice of the deficiencies" so that the

plaintiff can "use[] the opportunity to amend effectively." *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

   B.   **Analysis**

The Department of Education argues that the court lacks subject matter jurisdiction because Congress has not waived sovereign immunity for Ms. Winston's claims. Sovereign immunity protects the United States and its agencies "from suit without consent[.]" *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019). Whether the United States has waived its sovereign immunity to suit is a separate question from whether Congress has conferred jurisdiction on federal courts for a given type of suit. *See* Charles A. Wright & Arthur R. Miller, *Jurisdiction Over Actions Against the United States—The Sovereign Immunity Problem*, Federal Practice & Procedure §§ 3654 (4th ed. 2022) ("A statute waiving the Government's immunity to suit does not always also confer jurisdiction upon the federal courts . . . . Likewise, a statute conferring jurisdiction . . . does not always waive the Government's immunity[.]"). Nevertheless, the United States' consent is an independent "prerequisite for jurisdiction" in a suit against one of its departments. *Robinson*, 917 F.3d at 801 (quotation omitted). Sovereign immunity "can only be waived by statutory text that is unambiguous and unequivocal." *Id.* at 802. "The plaintiff bears the burden of showing that the government has waived sovereign immunity at the motion to dismiss stage." *Id.*

It is necessary first to determine what causes of action Ms. Winston asserts before assessing whether the United States has waived immunity to her claims.

### 1. Construction of Ms. Winston's Complaint

Ms. Winston's complaint is construed to assert claims under the HEA and the APA. In form, Ms. Winston's complaint identifies three causes of action: state law fraudulent misrepresentation, state law conspiracy to defraud, and violations of Department of Education privacy regulations. However, these formal causes of action do not match the substance of Ms. Winston's complaint. The court is not obligated to accept Ms. Winston's labels. Even if it were, it would be required to dismiss any claims inadequately stated because Ms. Winston proceeds in *forma pauperis*. 28 U.S.C. § 1915 (e)(2).

Ms. Winston simply does not assert claims for fraudulent misrepresentation or conspiracy to defraud. She primarily supports her misrepresentation count by alleging that her 1999 loan consolidation resulted from her completion of "unsolicited" materials which she understood to be "routine paperwork." (ECF No. 1, at 4, 6). She states that she was "unaware that a fee was charged and recall[s] that there was nothing indicated in the paperwork that there was such a fee." (*Id.*, at 4). This registers more as an admission of Ms. Winston's own inattention to detail than an allegation that her loan servicers misled or defrauded

6

her. That conclusion is reinforced by the lack of any connection to fraud in Ms. Winston's other allegations. Namely, she also pleads that she was defrauded because she was charged unspecified fees based on inaccurate calculations and because her disability and "extreme hardship" made her loans unenforceable. (*Id.*, at 6). Neither allegation contains a false representation. Ms. Winston's supposed conspiracy claim is equally devoid of substance. The sole basis for it is that Ms. Winston raised her purported fraud concerns many times but the Department did not remedy them. (*Id.*, at 7). The Government's mere denial her requests does not point to an agreement between parties to engage in unlawful conduct.

Ms. Winston comes closer to the mark with her purported claims for violations of the Department of Education's privacy regulations, which are actionable under the Privacy Act.[2] Unlike Ms. Winston's state law claims, these claims may have substance but are disconnected from the relief Ms. Winston seeks. Given that Ms. Winston only requests equitable relief, there appears to be one plausible theory of recovery: failure "to amend an individual's record in accordance with [her] request." *See* 5

---

[2] Ms. Winston cites to 34 C.F.R. § 5B.3. That part of the Department of Education regulations "implements section 3 of the Privacy Act of 1974." 34 C.F.R. § 5b.2.

U.S.C. § 552a(g)(1)(A), (2)(A).[3]  Ms. Winston clearly alleges that the Department of Education wrongly classified her loans as being in default, sent her debt to collections, and withheld funds from her under the Treasury offset program.  Ms. Winston therefore might have brought this suit to obtain orders to remove the default classification and cease use of collection agencies and the Treasury offset program.  *See Salazar v. King*, 822 F.3d 61, 82-83 (2ᵈ Cir. 2016) (allowing review of the Department of Education's refusal to suspend loan collection and send certain notices despite the fact that the Department had not yet resolved whether the plaintiff was eligible for discharge).[4]  But, Ms. Winston only requests recission of her loan agreements.

Properly read, Ms. Winston's complaint has one animating purpose: the discharge of her loans.  The allegations supporting her named claims seek to justify this result but cannot support independent causes of action, for the reasons just discussed.  Short of arguing that her loans were invalid from the start, there appear to be two possible causes of action for discharging

---

[3] Ms. Winston also objects to the disclosure of her loan information to collections agencies.  Improper disclosure of private information is actionable under the Privacy Act, *see* 5 U.S.C. § 552a(g)(1)(D); *id.* § 552a(b); 34 C.F.R. § 5b.9, but only for money damages, *FAA v. Cooper*, 566 U.S. 284, 299 (2012) (interpreting 5 U.S.C. § 552a(g)(4)).

[4] It is not clear whether the proper vehicle for such relief would be the Privacy Act or the APA.

federally guaranteed student loans: the HEA and the APA.  The HEA sets out limited circumstances under which the Department of Education shall discharge student debt.  20 U.S.C. § 1087(a).  Requests for discharge under the HEA are often adjudicated within an APA suit, for reasons discussed below.  *See Gavin v. Dep't of Air Force*, 324 F.Supp.3d 147, 151 (D.D.C. 2018) (asserting that HEA discharge claims may be sought administratively and then challenged under the APA); *Wimberly v. U.S. Dep't of Educ.*, No. 12-cv-7773, 2013 WL 6123172, at *2 (S.D.N.Y. Nov. 12, 2013) (same).

Ms. Winston's complaint is therefore construed to assert an HEA claim for discharge on the grounds that her outstanding debt has been incorrectly calculated, and that her disability and economic hardship entitle her to relief.  It is also construed to assert an APA claim challenging any Department decision denying Ms. Winston's request for discharge.  To the extent Ms. Winston seeks relief short of discharge that might be available through the causes of action named in her complaint (or otherwise through the APA), such as money damages, an order requiring the Department to remove the default classification, or an order prohibiting the use of collection agencies or the Treasury offset program to recover her debt, she may seek leave to amend and say so clearly.

2.   **HEA**

The HEA provides a fairly broad waiver of sovereign immunity on its face, stating that the Secretary may "sue and be sued . . .

9

in any district court of the United States." 20 U.S.C. § 1082(a)(2).[5] "It is settled that a statute authorizing an agency to sue and be sued" presumptively waives sovereign immunity, "although the scope of the waiver with respect to the incidents of litigation, such as the availability of punitive damages as a remedy, may be subject to further inquiry." Charles A. Wright & Arthur R. Miller, *Actions Against Federal Agencies and Officers*, Federal Practice & Procedure § 3655 (4th ed. 2022).[6]

Here, either the scope of the waiver, or the federal jurisdiction to adjudicate HEA claims, is limited. Following a sub-clause extending to federal district courts jurisdiction over civil actions arising under the Federal Family Education Loan Program, Section 1082 of the HEA states that "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control." 20 U.S.C. § 1082(a)(2). As Judge Blake has noted, "[c]ourts have repeatedly held that [§ 1082(a)(2)] prohibits claims for injunctive relief against the Secretary in

---

[5] The court assumes that the waiver of immunity for suits against the Secretary extends to suits against the Department.

[6] It is often unclear whether a given statutory provision limits a waiver of sovereign immunity, a statutory cause of action, or the jurisdiction conferred on federal courts. The Department makes no attempt to differentiate among these three concepts. The outcome is the same regardless because all three are necessary to Ms. Winston's suit and there is no suggestion that another statute might waive immunity to her HEA or APA claims.

relation to his powers under the HEA." *Lipczenko v. Duncan*, No. 09-cv-1407-CCB, 2010 WL 672846, at *1 (D.Md. Feb. 22, 2010) (collecting cases); *see also Carr v. Devos*, 369 F.Supp.3d 554, 559 (S.D.N.Y. 2019).

Here, Ms. Winston asks the court for "rescission of the contract, with extinguishing all duties and obligations of the such." (ECF No. 1, ¶¶ 1, 22). As noted above, this request would necessarily prohibit the Department of Education from enforcing the loan agreements and attempting collection on outstanding debt. A request for an order of cessation of collection efforts "is plainly injunctive." *Dennis v. U.S. Dep't of Educ.*, No. 19-cv-2064-DKC, 2020 WL 6450212, at *5 (D.Md. Nov. 3, 2020). Accordingly, the court does not have jurisdiction over any HEA cause of action for discharge that Ms. Winston may assert.

3. **APA**

Section 702 of the APA adopts a broad waiver of sovereign immunity, stating that an action "seeking relief other than money damages and stating a claim that an agency . . . acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States[.]" 5 U.S.C. § 702. This waiver extends to APA and non-APA causes of action. *Standage v. Braithwaite*, 526 F.Supp.3d 56, 86 (D.Md. 2021) (citing *Food Town Stores, Inc. v. EEOC*, 708 F.2d 920, 921-22 (4th Cir. 1983)).

But the APA's waiver is qualified. It can be limited by another statute. Section 702 states that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702; *see also Standage*, 526 F.Supp.3d at 86 (same); Charles A. Wright & Arthur R. Miller, *Statutory Exceptions to Sovereign Immunity – Actions for Nonmonetary Relief Under the Administrative Procedure Act*, Federal Practice and Procedure § 3659 at n.53, n.54, n.55 (4th ed. 2022) (collecting cases). In addition, the scope of an APA cause of action is limited, absent other statutory authority, to challenges to "final agency action[s] for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Whether jurisdictional or not, this is a necessary precondition to suit. *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430-31 (4th Cir. 2019) (holding subject matter jurisdiction is lacking where a plaintiff fails to challenge a proper agency action); *Perry Capital v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017) (holding that finality and adequate remedy are elements of an APA cause of action and not jurisdictional requirements).[7]

---

[7] It appears that the "final agency action" with "no other adequate remedy" requirement limits only the scope of the APA cause of action, and not the scope of the APA's waiver of sovereign immunity for non-APA causes of action. *Perry Capital*, 864 F.3d at 620-21 (D.C. Cir. 2017); *Trudeau v. FTC*, 456 F.3d 178, 186-87 (D.C. Cir. 2006).

The Department of Education does not seriously assert that another statute expressly or implied forbids an APA challenge seeking discharge of the plaintiff's student loans. Although the Department contends that the HEA's prohibition on injunctive relief bars review under the Privacy Act, that argument is limited to a single bare sentence and is not also asserted against the APA. (ECF No. 11-1, at 11). In addition, "[m]any federal district and circuit courts have concluded that the APA grants federal courts subject matter jurisdiction over cases seeking declaratory and injunctive relief for injuries caused by the Secretary's decisions made under the HEA." *Adams v. Duncan*, 179 F.Supp.3d 632, 640 (S.D.W.V. 2016) (collecting cases).

However, Ms. Winston has not shown that the Department has taken a final agency action regarding her eligibility for discharge of her loans, or that a suit in this court now is the only adequate remedy for her continued liability for the loans. Final agency actions are (1) "circumscribed and discrete," (2) "the consummation of the agency's decisionmaking process" and not "merely tentative or interlocutory," and (3) determine rights or obligations or create legal consequences. *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 194 (4th Cir. 2013).

Ms. Winston can apply administratively for discharge of her loans but has not done so. The HEA authorizes the Department of

13

Education to discharge student borrowers' loans in limited circumstances, typically upon application by the individual borrower. Discharge is available in the event of death, total and permanent disability, false certification of eligibility, or attendance at a school that closed or failed to provide refunds. 20 U.S.C. § 1087(a), (c); 34 C.F.R. § 682.402. (A borrower may also seek discharge during bankruptcy proceedings, 34 C.F.R. § 682.402(f), (i), but must show undue hardship, 11 U.S.C. § 523(a)(8)). In the complaint and attached letters to the Department of Education, Ms. Winston argues that her loans are unenforceable because her outstanding debt has been improperly calculated, she is disabled, and she has faced severe economic hardship. It appears only Ms. Winston's disability status could support a request for discharge under the HEA, although she can likely challenge administratively the amount of debt owed.

The HEA states that "the Secretary shall discharge" a student borrower's liability "by repaying the amount owed on the loan" if the borrower "becomes permanently and totally disabled," which includes being "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that . . . has lasted for a continuous period of not less than 60 months, or can be expected to last for a continuous period of not less than 60 months[.]" 20 U.S.C. § 1087(a)(1).

Department of Education regulations adopt the same definition. 34 C.F.R. § 682.200(b) (referenced in *id.* § 682.402(c)(1)(i)).

Unless the Department of Education exercises its discretion to discharge a borrower's loan unilaterally, 34 C.F.R. § 682.402(c)(10), a borrower must submit an application to have her loan discharged based on her disability, *id.* § 682.402(c)(1)(i)-(ii), (2). Once notified of a borrower's intent to apply, the Secretary must provide her with the relevant application information. *Id.* § 682.402(c)(2)(ii). "The borrower must submit to the Secretary an application for a total and permanent disability discharge on a form approved by the Secretary." *Id.* § 682.402(c)(2)(iv). The application "must contain" a recent physician certification of total and permanent disability and "a [Social Security Administration] SSA notice of award for Social Security Disability Insurance (SSDI) or Supplemental Security Income (SSI) benefits indicating that the next scheduled disability review will be within five to seven years." *Id.* § 682.402(c)(2)(iv)-(v).

The Department of Education's loan analyst attests that, "[a]s of September 16, 2021, [Department] records do not reveal that Ms. Winston has ever submitted a request for administrative discharge of any student loan due to Total and Permanent Disability." (ECF No. 11-2, ¶ 32). Ms. Winston can show that she protested Department action at every turn, but not that she

15

submitted an application for discharge. She pleads that she "submitted dispute letters and complaints" regarding the Treasury offset and the collection letters she received, filed "an online civil rights complaint" with the Department of Education," and requested to have the default status on her loan removed. (ECF No. 1, ¶¶ 5, 7). She attaches evidence of correspondence with the Department and a receipt for the Office of Civil Rights complaint. (ECF No. 1-2, at 10 (Office of Civil Rights Complaint), 13 (letter), 16 (same), 18 (same), 19 (same), 21 (same), 25 (same), 26 (same), 29 (same), 31 (same)). In one letter, she states that she submitted medical documents and a SSI letter to the Department of Education in December 2018. (*Id.*, at 22). She even attaches a form "Request for Review" dated November 2018 in which she checks the box indicating her loan is not enforceable but not the box regarding discharge for disability. (*Id.*, at 32-33). The court finds that Ms. Winston has not submitted an application for discharge and concludes as a result that the Department has not taken the requisite final agency action.[8]

---

[8] In her opposition, Ms. Winston attempts to introduce for the first time a procedural due process claim. (ECF No. 13, at 3). She appears to contend that to the extent she "cannot pursue injunctive remedies" under the HEA, she is left without any avenue for disputing her debt. (*Id.*). "The essential requirements of due process . . . are notice and opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Any procedural due process claim Ms. Winston seeks to raise would be based on the mistaken premise that she has no opportunity to

The court lacks subject matter jurisdiction over Ms. Winston's HEA claim and has no final agency action to review for Ms. Winston's APA claim. The court need not reach the Department's merits arguments.

## IV. Conclusion

For the foregoing reasons, the Department of Education's motion to dismiss will be granted. Ms. Winston's complaint will be dismissed without prejudice. A separate order will follow.

                                                                         /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge

---

seek discharge of her debt. As just discussed, Ms. Winston can apply to the Department for that very relief. In addition, the APA provides her with the opportunity to challenge any denial of her application or other final agency actions taken in response to her requests to cease collection efforts.